ZORADUS D. STEVENS *vs.* JOHN W. MANSON, and another.

Somerset.    Opinion April 16, 1895.

*Disclosure Commissioners.  Execution.  Arrest.  R. S., c. 82, § 138;*
*c. 83, § § 18, 22 ;  Stat. 1887, c. 137, § § 20, 23.*

By the statutes of this State, the Supreme Judicial Court and trial justices may not issue executions until twenty-four hours after rendition of judgment.

It was the rule of procedure at common law that execution might issue as soon as final judgment was signed.

*Held :* that the statutes applicable to the Supreme Judicial Court and trial justices, requiring the issue of execution to be deferred twenty-four hours after the rendition of judgment, do not apply to disclosure commissioners.

Under the statute of 1887, c. 137, § 20, there is no appeal by a debtor from the decision of a commissioner refusing a discharge, and that magistrate may issue at once a *capias*, and also an execution for costs at the same time.

A poor debtor failed to obtain a discharge before a disclosure commissioner, and, having been arrested afterward on a *capias* issued by the commissioner, began a disclosure before two justices of the peace which was interrupted by his refusal to be examined, he claiming that one of the magistrates was not authorized to act, although he was mistaken in that respect.

The officer holding him in arrest assumed, under the statute, to select another justice and the debtor then went on with his disclosure and was discharged. From the time of the debtor's arrest on the *capias* and attempted disclosure until he was discharged, he was not committed to jail or actually held in confinement by the officer, but was allowed to remain at home, when not under examination, upon the assurance of his attorney that he would be responsible for him as keeper. The attorney of the execution creditor claimed that the proceedings at the time of the interrupted disclosure, as stated above, were illegal and notified the officer who informed the debtor that he should have to hold him in custody. *Held:* that there was no second arrest.

ON REPORT.

This was an action for false imprisonment brought by the plaintiff, an execution debtor, against two defendants, one being the attorney of the creditors and the other a disclosure commissioner.

The case is sufficiently stated in the opinion.

*Frank W. Hovey,* for plaintiff.
*J. W. Manson and Abel Davis,* for defendants.

SITTING : PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, WISWELL, JJ.

STROUT, J., having been of counsel, did not sit.

WHITEHOUSE, J.   This is an action for an alleged unlawful arrest and false imprisonment.

March 11, 1893, the plaintiff was cited to disclose at Pittsfield in the County of Somerset, on an execution against him for twenty-five dollars and sixty-one cents damages, and ten dollars and twenty-nine cents costs, before the defendant, Davis, as disclosure commissioner, in accordance with the provisions of chapter 137 of the laws of 1887, but failed to obtain the benefit of the oath provided for in section eight of that Act.   Thereupon, May 2, 1893, the magistrate appears to have issued a *capias* and annexed it to the execution in force at that time in accordance with section 20, and on the same day rendered judgment and issued a separate execution against the debtor and in favor of the petitioner for his costs and fees taxed at fifteen dollars and twelve cents, pursuant to section 23, of the same Act.   June 19,

1893, the plaintiff was arrested by virtue of this execution for costs, and also of the original execution, and caused the creditor to be cited on the former to appear before two justices of the peace and quorum June 21, 1893, for the purpose of submitting himself to examination and obtaining the benefit of the oath authorized by R. S., c. 113, § 30. The creditor appeared by his attorney, J. W. Manson, one of the defendants in this suit, and selected a justice residing in another county. Under the erroneous impression that such a justice was ineligible (*Blake* v. *Peck*, 77 Maine, 588) the debtor's attorney objecting to the creditor's choice, the debtor refused to be examined before him, and the officer chose another justice, certifying that he did so because the creditor had " unreasonably neglected and refused to procure the attendance of a justice residing in Somerset county." The creditor's attorney withdrew, and the tribunal thus organized heard the debtor's examination and administered the oath. But the debtor becoming satisfied that this proceeding was *coram non judice* and void, caused the creditor to be cited again to appear at his disclosure on the original execution before two justices on the twenty-sixth day of June. It appears from the record of the magistrates and the return of the officer that, after a disagreement on the part of the justices then selected by the debtor and creditor, and a selection of a third justice by the officer, the oath was administered and a discharge granted to the debtor on the twenty-eighth day of June.

The plaintiff now claims that the defendants are liable for an unlawful arrest on the execution for costs, on the ground that it was issued by the disclosure commissioner before the expiration of twenty-four hours from the rendition of the judgment and therefore irregular and void ; and secondly, that they are liable for an unlawful arrest on June 21, for the alleged reason that the officer released the debtor after the attempted disclosure of that date and subsequently re-arrested him.

I.   It is the opinion of the court that the first ground is indefensible as a matter of law. It was undoubtedly the rule of procedure at common law that execution might issue as soon as final judgment was signed, and before its entry of record "provided there was no writ of error depending or agreement to the

contrary." This is expressly laid down in the English books of practice. Tidd's Pr. 994 ; Sheridan's Pr. 299. Not even the docketing of a judgment was deemed essential to its existence or a condition precedent to the issue of execution. But the time when execution may issue has been the subject of regulation by statute in the different states, and while considerable diversity exists, it seems to be the policy of these statutes in a majority of the states to allow execution to issue immediately upon the rendition, entry or docketing of a judgment. Freeman on Ex'ons, § 24 ; Herman on Ex'ons, § 70.

In this State the provisions of the statute, relating to the Supreme Judicial Court and trial justices, authorize the issue of execution twenty-four hours after the rendition of judgment. R. S., c. 82, § 138, and c. 83, § 22. With respect to the former, the general object of the statute was undoubtedly to "give the debtor an opportunity to examine into the correctness of the judgment." *Penniman* v. *Cole*, 8 Met. 496. In the case of trial justices, the obvious purpose was to maintain the consistency of the different provisions of the statute respecting the procedure, and preserve the debtor's right given by section 18, chapter 83, to enter an appeal from the decision of a trial justice at any time within twenty-four hours after its rendition. Prior to 1871 there seems to have been no express provision of the statute designating the time that must elapse before a justice of the peace or trial justice could issue execution ; but in *State* v. *Hall*, 49 Maine, 412, it was declared to be inconsistent for a justice to issue an execution while the right of appeal existed.

The statute authorizing the disclosure commissioner to issue the "separate execution" for costs under consideration is as follows : "In case said oath is not administered to the debtor, the petitioner shall recover his costs and said fees, as in actions before a trial justice, and the magistrate shall issue a separate execution therefor." Statute of 1887, c. 137, § 23. This language cannot reasonably be construed to bring disclosure commissioners within the prohibition of the statutes, applicable to trial justices, in regard to the time within which the execution may be issued. It simply provides that the petitioner may

recover judgment for his costs to be taxed as in actions before a trial justice. Nor does the reason for deferring the issue of a justice execution exist in case of a disclosure commissioner. Section 20 of the act above named gives the debtor no appeal from the decision of the commissioner that he is not entitled to the benefit of the oath, but authorizes that magistrate to issue a *capias* at once and attach it to the execution in force at the time of the disclosure ; and upon this execution the debtor may be at once arrested. No valid reason is apparent why the separate execution for costs should not issue at the same time by virtue of the provisions of section 23 above quoted. Under the construction claimed by the plaintiff, the operation of this section would be inconsistent with that of section 20, and incompatible with the obvious purpose of both. The meaning of the statute cannot in this instance be thus extended by construction beyond its terms.

The execution, therefore, appears from the commissioner's original record to have been regularly and properly issued.

II. The plaintiff's second contention, that he was released from arrest and subsequently re-arrested on the same execution, is not supported by the facts. The plaintiff was never committed to jail or actually held in any place of confinement by the officer, but was allowed to remain at home, when not under examination, upon the assurance of his attorney that he would be responsible for him as keeper. No change appears to have been made in this arrangement after the attempted disclosure of June 21st. The officer who was a witness for the plaintiff says he informed the plaintiff of the creditor's claim that those proceedings were illegal and that he "should have to hold him in custody ;" that he did not discharge the debtor but followed the instructions of Mr. Manson to hold him whether the justices then sitting discharged him or not. But he was allowed to go to his home as before when his presence was not required before the justices. The arrangement for his attorney to act as keeper continued from June 19, until the discharge of the debtor on June 28. There was no second arrest.

*Judgment for defendants.*